UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN CORRION,

        Petitioner,

v.                                      Case Number 10-10593
                                      Honorable David M. Lawson

BRIAN LAFLER,

        Respondent.

_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

Petitioner John Corrion, presently confined at the Kinross Correctional Facility in Kincheloe, Michigan, has filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254. The petitioner pleaded *nolo contendere* to assault with intent to do great bodily harm less than murder in the Livingston County, Michigan circuit court under a plea bargain that limited his custody sentence to one year. The victim of the crime was his ex-wife. At the sentence hearing, the judge imposed the one-year jail term plus a five-year period of probation. No one objected at the time. However, when the petitioner violated his probation by soliciting a fellow jail inmate to murder his wife, the state judge determined that he violated his probation and sentenced him to a term of imprisonment of six to ten years. The petitioner takes issue with that outcome and raises eleven claims in his petition. The respondent has filed an answer to the petition raising, among other things, an unmeritorious procedural default defense. The Court finds that the petitioner's claims lack merit and do not warrant habeas relief. The Court therefore will deny the petition.

I.

The factual basis for the petitioner's no contest plea was taken from the preliminary examination transcript.  At his preliminary examination, the petitioner's ex-wife, Karen Corrion, testified that on the night of May 10, 2005, she went outside her house in Howell Township to investigate a noise.  She saw the petitioner dumping trash onto her property.  When she confronted him, the petitioner struck her with a flashlight numerous times.  As a result of injuries sustained in the beating, Karen Corrion was treated at a hospital, and she received about twenty stitches and twenty staples in her head.  She also suffered a broken wrist.  The petitioner was bound over to the circuit court for trial.

A plea agreement was reached on April 4, 2006.  The prosecutor agreed on the record (1) not to request a bond revocation prior to sentencing; (2) not to object to work-release, if the petitioner was eligible for the program; and (3) to recommend a maximum jail sentence of one year.  The trial court stated that it would allow the petitioner to withdraw from the plea agreement if, after reading the presentence information report, the court determined that a longer custodial sentence was appropriate.  The court also cautioned the petitioner that he would not be allowed to withdraw his no contest plea if he was not placed in the work release program.  Defense counsel acknowledged that the petitioner understood the terms of the agreement.

The petitioner was then placed under oath.  He acknowledged his understanding of the plea agreement.  He denied that he was under the influence of any alcohol, drugs, or medication.  The petitioner acknowledged that the maximum penalty for assault with intent to do great bodily harm was ten years in prison, and he stated that he wished to plead no contest to that charge.

The court then informed the petitioner of the trial rights he was waiving by pleading no contest, and the petitioner stated that he understood those rights and wished to waive them.  The

petitioner stated it was his own free choice to plead no contest, and that he had enough time to talk with his lawyer about the decision.

The court referred to the preliminary examination transcript to ascertain a factual basis for the plea. The prosecutor and the petitioner's counsel agreed that the transcript covered the necessary elements of the crime. The court found that the petitioner understood the agreement, that the petitioner's participation in the agreement was voluntary, and that the agreement was accurately given.

At the sentencing hearing, the petitioner and his attorney acknowledged that they read the presentence report, and the petitioner declined the court's offer for more time to review the report. The report recommended a one-year jail term and a five-year term of probation. The court accepted the report and imposed the recommended sentence. At no time did the petitioner or his attorney express a desire to withdraw the plea due to the probationary term. Rather, the petitioner thanked the court for "mak[ing] this probation plea agreement available to me." Tr. May 1, 2006 at 10. The court also assessed the petitioner $47,000 in restitution for the victim's medical expenses. Defense counsel objected on the ground that the victim's out-of-pocket expenses were much lower because the victim was covered by medical insurance. The court overruled the objection.

While he was serving his jail sentence, the petitioner solicited another prisoner to murder Karen Corrion. That ultimately led to his conviction for solicitation to commit murder and a new prison sentence of 262 months to forty years. That conviction was the subject matter of another habeas corpus action, which this Court resolved against the petitioner. *Corrion v. Berghuis*, No. 09-10696, 2011 WL 2669296 (E.D. Mich. July 7, 2011).

The state court found that the petitioner's solicitation of his cellmate to murder Karen Corrion constituted a violation of the terms of the petitioner's probation sentence in the assault case. At a hearing held on April 26, 2007 the petitioner's attorney argued that there was no violation of probation because the petitioner was still in jail when the violation occurred. The court rejected that argument, finding that the petitioner's probationary term began at sentencing, not after he was released from jail. The petitioner's attorney then acknowledged the obvious: that the jury's verdict in the solicitation case provided a sufficient basis for finding a probation violation. The court revoked the petitioner's probation and resentenced him on his assault conviction to a term of six to ten years to run consecutively to his sentence on the solicitation to commit murder conviction.

The petitioner filed an application for leave to appeal in the Michigan Court of Appeals, raising one claim: his sentence was an unwarranted departure from the range set forth under the sentencing guidelines. The Michigan Court of Appeals denied the appeal "for lack of merit in the grounds presented," *People v. Corrion*, No. 282703 (Mich. Ct. App. Feb. 5, 2008), but the Michigan Supreme Court vacated the sentence and remanded the case for the trial court to either state substantial and compelling reasons for the guidelines departure or to resentence the petitioner within the guidelines range, *People v. Corrion*, 481 Mich. 875, 748 N.W.2d 844 (2008).

Before resentencing, the petitioner filed a motion for relief from judgment. The trial judge denied the motion in an opinion and order dated August 25, 2008. It appears from that opinion that the petitioner raised what now form his first five habeas claims in the present petition. The trial court addressed and denied those claims on the merits.

The petitioner filed an application for leave to appeal the trial court's order in the Michigan Court of Appeals. The application raised the five claims presented to the trial court, plus another

-4-

four claims that are also presented in the current petition. The application to appeal was denied "for failure to establish entitlement to relief under Michigan Court Rule 6.508(D)." *People v. Corrion*, No. 288138 (Mich. Ct. App. Mar. 11, 2009) [dkt. #25-3] at 1. The petitioner appealed that decision to the Michigan Supreme Court, but it too denied relief under Rule 6.508(D). 485 Mich. 974, 774 N.W.2d 859 (2009).

Meanwhile, on remand from the petitioner's direct appeal, the trial court found that there were substantial and compelling reasons to depart from the state sentencing guidelines and once again imposed the six-to-ten-year prison term. The petitioner appealed the sentence again and raised the following five claims: (1) the petitioner was penalized for a probation violation when the probationary period had not yet begun; (2) the petitioner's sentencing guidelines were scored incorrectly; (3) the petitioner's punishment for both solicitation to commit murder and probation violation violates the protections against double jeopardy; (4) the prosecutor waived any challenge to the petitioner's claims by failing to respond to the petitioner's application for leave to appeal; and (5) the petitioner's sentence was disproportionate to his crime.

The appellate courts denied the application for leave to appeal for lack of merit. *People v. Corrion*, No. 292158 (Mich. Ct. App. Mar. 11, 2010); *People v. Corrion*, 487 Mich. 857, 784 N.W.2d 810 (2010).

The original habeas petition was filed in this Court on February 11, 2010 and includes eleven claims. The petitioner also filed a motion to vacate his sentence, which the Court construed as an amended petition to add an additional claim. The petitioner, through the original petition and its amendment, seeks a writ of habeas corpus on the following grounds:

I  WAS DEFENDANT'S PLEA UNKNOWINGLY AND INVOLUNTARY MADE WHERE EVIDENCE INDICATES PLEA WAS INACCURATE AS

TO INSUFFICIENT PROSECUTION PROOFS REGARDING EVIDENCE?

II      WAS DEFENDANT'S PLEA INVOLUNTARILY MADE WHERE PROSECUTION'S PROOFS DID NOT SUPPORT FACTUAL BASIS FOR ASSAULT ELEMENT TO COMMIT BATTERY?

III     WAS COUNSEL INEFFECTIVE WHEN THE PLEA OFFER WAS ILLUSORY AND IT'S BENEFITS WERE EXAGGERATED TO THE DEFENDANT AND NOT FULLY DISCLOSED?

IV      DID COUNSEL ERR BY OFFERING AN ALTERNATE CHARGE OF FELONIOUS ASSAULT THAT STILL REQUIRES PROOF OF INTENT?

V       DID COUNSEL ERR BY FAILING TO OBJECT TO SCORING IN PRESENTENCE INVESTIGATION (PSI) SENTENCE INFORMATION REPORT (SIR) THAT WAS PREJUDICIAL TO THE DEFENDANT?

VI      WAS DEFENDANT-APPELLANT DENIED HIS SIXTH AND FOURTEENTH AMENDMENT RIGHTS TO FIRST-TIER APPEAL AND APPOINTMENT OF COUNSEL BY TRIAL COURT?

VII     WAS DEFENDANT-APPELLANT PENALIZED BY TRIAL COURT WHEN THEY VIOLATE MCL 780.766 ET SEQ FOR RESTITUTION?

VIII    WAS DEFENDANT-APPELLANT DISADVANTAGED AS PROSECUTOR DID NOT SEEK THE TRUTH BUT ONLY TO CONVICT?

IX      WAS DEFENDANT-APPELLANT HARMED BY THE TRIAL COURT THAT WAS NOT NEUTRAL, DETACHED BUT INSTEAD COERCIVE IN SENTENCING THE DEFENDANT?

X       WAS DEFENDANT-APPELLANT DENIED EQUAL PROTECTION/DUE PROCESS OF THE MICHIGAN COURT RULES BY HIGHER COURTS REQUIRING REVERSAL?

XI      WAS DEFENDANT-APPELLANT DENIED HIS DUE PROCESS RIGHT TO PROTECT LIFE, LIBERTY AND PROPERTY BY THE IMPEACHABLE, PERJURED FALSE TESTIMONY OF PEOPLE'S WITNESSES?

XII.    THE TRIAL COURT ON APRIL 26, 2007, PENALIZED THE PETITIONER TWICE FOR [THE ASSAULT CONVICTION], WITH A

PROBATION VIOLATION SENTENCE, DESPITE EVERYTHING KNOWN AND FACTORED IN, EVERYTHING WAS MORE THAN FACTORED IN PER PETITIONER'S [SOLICITATION TO MURDER CONVICTION].

Pet. at 1-4; Mot. Vacate Sent. at 1.

In his answer to the petitioner, the respondent argues that review of the petitioner's first nine claims is procedurally barred because the Michigan appellate courts relied on Michigan Court Rule 6.508(D) in denying the petitioner relief in one of his state appeals. A procedural default is "a critical failure to comply with state procedural law." *Trest v. Cain*, 522 U.S. 87, 89 (1997). Such a default may occur if the state prisoner fails to present an issue to a state appellate court at his only opportunity to do so, *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994), or if he fails to comply with a state procedural rule that required him to have done something at trial to preserve his claimed error for appellate review, *e.g.*, make a contemporaneous objection or file a motion for a directed verdict, *see Simpson v. Sparkman*, 94 F.3d 199, 202-03 (6th Cir. 1996). Procedural default will bar consideration of the merits of a federal claim if the state rule is actually enforced and is an adequate and independent ground for the state court's decision. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Monzo v. Edwards*, 281 F.3d 568, 575-76 (6th Cir. 2002).

The petitioner's first nine claims were raised in his motion for relief from judgment. Both state appellate courts denied relief pursuant to Michigan Court Rule 6.508(D), which states in part that a court may not grant relief to a defendant if the motion for relief from judgment alleges grounds for relief that could have been raised on direct appeal, absent a showing of good cause for the failure to raise such grounds previously and actual prejudice resulting therefrom. Mich. Ct. R. 6.508(D)(3). The Sixth Circuit has held that when the form order used by the Michigan Supreme Court to deny leave to appeal does not explain whether its citation to Michigan Court Rule 6.508(D) refers to the

procedural default subsection or to a rejection on the merits, the Court must look through the unexplained order of the Michigan Supreme Court to the last reasoned state court opinion to determine the basis for the denial of state post-conviction relief. *Guilmette v. Howes*, 624 F.3d 286, 291-92 (6th Cir. 2010) (en banc).

The state trial court did not rely on procedural grounds in denying relief. Rather, it addressed and rejected each claim on the merits. Consequently, those claims are not procedurally defaulted simply because the state appellate court cited Rule 6.508(D). Moreover, "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). The cause and prejudice inquiry for the procedural default merges with an analysis of the merits of many of the petitioner's claims; therefore, the Court will proceed to the merits.

II.

The provisions of the Anti Terrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering an application for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003). As amended, 28 U.S.C. § 2254(d) permits a federal court to issue the writ only if the state court decision on a federal issue "was contrary to, or involved an unreasonable application of, clearly established [f]ederal law, as determined by the Supreme Court," or it amounted to "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2); *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998). Under that review standard, mere error by the state court does not justify

issuance of the writ.  The state court's application of federal law "must have been objectively unreasonable." *Wiggins,* 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000)). Additionally, this Court must presume the correctness of state court factual determinations.  28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (stating that "[t]he court gives complete deference to state court findings of historical fact unless they are clearly erroneous").

The Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases . . . .
>
> A state-court decision will also be contrary to [the Supreme] Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams*, 529 U.S. at 405-06.

The Supreme Court has held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision unreasonably applies the law of [the Supreme] Court to the facts of a prisoner's case."  *Id*. at 409. The Court has explained that an unreasonable application of federal law is different from an incorrect application of federal law.  Under that language, "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Williams*, 529

U.S. at 413. The Supreme Court has continued to emphasize the limited nature of this review.  In its recent unanimous decision in *Harrington v. Richter*, --- U.S. ---, 131 S. Ct. 770 (2011), the Court reiterated that the AEDPA requires federal habeas courts to review state court decisions with "deference and latitude," and "[a] state court's determination that a claim lacks merit precludes habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id*. at 785-86 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  The Sixth Circuit observed recently that "[t]his is a very high standard, which the [Supreme] Court freely acknowledges." *Peak v. Webb*, 673 F.3d 465, 472 (6th Cir. 2012).  The court suggested that *Richter* holds that the review standard "is even more constricted than AEDPA's plain language already suggests." *Ibid.*

The distinction between mere error and an objectively unreasonable application of Supreme Court precedent creates a substantially higher threshold for obtaining relief than *de novo* review. The AEDPA thus imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be "given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, ---, 130 S. Ct. 1855, 1862 (2010); *see id*. at 1865 (finding that the state court's rapid declaration of a mistrial on grounds of jury deadlock was not unreasonable even where "the jury only deliberated for four hours, its notes were arguably ambiguous, the trial judge's initial question to the foreperson was imprecise, and the judge neither asked for elaboration of the foreperson's answers nor took any other measures to confirm the foreperson's prediction that a unanimous verdict would not be reached"); *see also Bray v. Andrews*, 640 F.3d 731, 737-39 (6th Cir. 2011); *Phillips v. Bradshaw*, 607 F.3d 199, 205 (6th Cir. 2010); *Murphy v. Ohio*, 551 F.3d 485, 493-94 (6th Cir. 2009); *Eady v. Morgan*, 515 F.3d 587, 594-95 (6th Cir. 2008); *Davis v. Coyle*, 475 F.3d 761, 766-67 (6th Cir.

-10-

2007); *King v. Bobby*, 433 F.3d 483, 489-90 (6th Cir. 2006); *Rockwell v. Yukins*, 341 F.3d 507, 511 (6th Cir. 2003) (*en banc*).  Moreover, habeas review is "limited to the record that was before the state court."  *Cullen v. Pinholster*, --- U.S. ---, 131 S.Ct. 1388, 1398 (2011).

A.

The petitioner first argues that his plea was involuntary because there was insufficient proof to show that he intended to cause great bodily harm.  A guilty or no-contest plea involves a waiver of many substantial constitutional rights.  *Boykin v. Alabama*, 395 U.S. 238, 243 (1969).  A court may accept a guilty or no-contest plea only where it is a voluntary, knowing, intelligent act done with sufficient awareness of the relevant circumstances and likely consequences.  *Brady v. United States*, 397 U.S. 742, 748 (1970); *Fautenberry v. Mitchell*, 515 F.3d 614, 636-37 (6th Cir. 2008).  A guilty plea must be supported by "an affirmative showing that it was intelligent and voluntary."  *Boykin*, 395 U.S. at 242.

> A plea may be involuntary either because the accused does not understand the nature of the constitutional protections that he is waiving or because he has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt.  Without adequate notice of the nature of the charge against him, or proof that he in fact understood the charge, the plea cannot be voluntary in this latter sense.

*Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976) (citations omitted).

The petitioner's plea in this case was voluntary.  The trial court informed the petitioner of the terms of the plea and sentencing agreement and the maximum penalties for the charged crimes.  The trial court also advised the petitioner of the trial rights that he was waiving by pleading no contest.  The petitioner affirmed his understanding of the agreement, the maximum penalties, and the rights that he was waiving.

-11-

With respect to the nature of the charge, the name of the offense used during the plea proceeding (assault with intent to commit great bodily harm less than murder) adequately apprised the petitioner of the required intent element. When the court reviewed the preliminary examination transcript to ascertain a factual basis for the plea, it stated: "the Court does conclude from the severity of the assault that it was done with an intent to inflict great bodily harm but not with the intent to actually kill her." Tr. Apr. 4, 2006 at 10. Accordingly, the record shows that the petitioner was adequately informed of the nature of the offense to which he was pleading. The record simply does not support the argument that the petitioner was unaware of the element of intent to commit great bodily harm when he tendered his plea. Habeas relief therefore is not warranted on this basis.

B.

The petitioner next argues that there was an inadequate factual basis for his plea. Again focusing on the specific intent element, the petitioner contends that insufficient evidence of intent was presented at the preliminary examination, and the trial court could not have relied on the examination's factual basis for the plea. This argument fails for several reasons.

First, the trial court did reference a clear factual basis for the guilty plea that was established in the preliminary examination. Assault with intent to commit great bodily harm less than murder requires evidence of (1) an attempt or threat with force or violence to do corporal harm to another (an assault), and (2) an intent to do great bodily harm less than murder. *People v. Parcha*, 227 Mich. App. 236, 239, 575 N.W.2d 316, 318 (1997). The evidence at the preliminary examination, used for a factual basis at the plea hearing, showed that the petitioner struck his ex-wife in the head with a flashlight numerous times and hard enough to require multiple stitches and staples to close her head wounds. Under Michigan law, the perpetrator's intent can be inferred from the severity of the

-12-

injuries he inflicts on his victim.  *People v. Mills*, 450 Mich. 61, 71, 537 N.W.2d 909, 915 (1995).

There is ample evidence of the defendant's intent to commit great bodily harm less than murder.

Second, the Supreme Court has made it clear that as a matter of federal constitutional law,

a factual basis for a guilty plea need not be established for a state court to accept the plea.  *See North*

*Carolina v. Alford*, 400 U.S. 25, 37 (1970) (holding that "[a]n individual accused of crime may

voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if

he is unwilling or unable to admit his participation in the acts constituting the crime").  As the

Supreme Court explained in *Alford*, although the federal courts are required by Rule 11 of the

Federal Rules of Criminal Procedure to establish a factual basis for a guilty plea, the Constitution

imposes no such requirement upon the states.  *Id.* at 38 n.11; *see also Roddy v. Black*, 516 F.2d

1380, 1385 (6th Cir. 1975) (holding that "there is no constitutional requirement that a trial judge

inquire into the factual basis of a plea"); *United States v. McGlocklin*, 8 F.3d 1037, 1047 (6th Cir.

1993) (stating that the failure of a state trial judge to conduct an on-the-record inquiry into the

factual basis for a plea is not a basis for habeas relief), *overruled on other grounds by Custis v.*

*United States*, 511 U.S. 485 (1994).

Third, although the Michigan Court Rules require the trial court to elicit a factual basis for

a guilty plea, *see* Mich. Ct. Rule 6.302(D)(1), a violation of state court rules will not support the

issuance of a writ of habeas corpus.  It is well established that "federal habeas corpus review does

not lie for errors of state law."  *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (quoting *Lewis v. Jeffers*,

497 U.S. 764, 780 (1990)).  The Sixth Circuit has held that "[i]n a habeas corpus proceeding, it is

not the province of a federal appellate court to review the decision of the state's highest court on

purely state law."  *Long v. Smith*, 663 F.2d 18, 22-23 (6th Cir. 1981).  It is clear here that the state

-13-

court did establish a factual basis for the petitioner's no contest plea.  Even if the state court had erred in establishing a factual basis, no federal constitutional error has been alleged and the petitioner's claim that the trial court failed to establish a sufficient factual basis to support his guilty plea does not provide grounds for federal habeas relief.

C.

The petitioner next argues that his trial counsel was ineffective for failing to advise him that he would receive a five-year term of probation in addition to the one-year jail sentence.

The two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), governs claims of ineffective assistance of counsel.  *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005).  To show a violation of the Sixth Amendment right to effective assistance of counsel, a petitioner must establish that his attorney's performance was deficient and that the deficient performance prejudiced the defense.  *Strickland*, 466 U.S. at 687.  Counsel's performance is deficient if the attorney's representation "fell below an objective standard of reasonableness."  *Id.* at 688.  The defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Id.* at 687.  "Judicial scrutiny of counsel's performance must be highly deferential."  *Strickland*, 466 U.S. at 689.  The Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms."  *Wiggins v. Smith* 539 U.S. 510, 521 (quoting *Strickland*, 466 U.S. at 689 (internal quotes omitted)).

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  *Strickland*, 466 U.S. at 687.

-14-

The petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

The *Strickland* framework applies to claims of ineffective assistance of counsel arising from a guilty or *nolo contendere* plea. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985); *Carter v. Collins*, 918 F.2d 1198, 1200 (5th Cir. 1990). The first prong of the test remains the same. *Hill*, 474 U.S. at 58. However, the prejudice requirement focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. *Id.* at 59. In other words, the defendant must show "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded [*nolo contendere*] and would have insisted on going to trial." *Ibid.*; *Carter*, 918 F.2d at 1200; *see also Smith v. United States*, 348 F.3d 545, 551-52 (6th Cir. 2003).

Here, there was no mention of a five-year probation term at the plea hearing. The only sentence discussed was the one-year jail term. The petitioner was informed at the plea hearing, however, that he would be allowed to withdraw his plea if the trial court decided to exceed the one-year jail term. The presentence report recommended a five-year probationary period in addition to the one-year jail term. The petitioner and his attorney stated that they had reviewed the report prior to the sentencing hearing. The petitioner indicated that he did not need any additional time to review the report. At no point during the sentencing hearing did the petitioner or his counsel indicate dissatisfaction with the plea agreement or recommended sentence of probation. In fact, as noted above, the petitioner thanked the court for making the "probation plea agreement available." Tr. May 1, 2006 at 10. The petitioner has not demonstrated a reasonable probability that he would not

-15-

have pleaded no contest had the possibility of a five-year probationary term been raised by the court or counsel prior to his plea.  The claim therefore is without merit.

D.

The petitioner argues in his fourth claim that his counsel was ineffective when, at the conclusion of the preliminary examination, counsel suggested that the evidence justified a bind-over for the offense of felonious assault.  There was no deficient performance there.  The record demonstrates that counsel was arguing that the evidence did not establish the charge of assault with intent to commit great bodily harm, and he suggested instead that the court should authorize only the lesser charge of felonious assault.  That basic defense tactic fell squarely within professional norms.  *See Poindexter v. Mitchell*, 454 F.3d 564 (6th Cir. 2006) (concession by defense counsel that the petitioner was guilty of murder but not guilty of aggravated murder did not amount to a violation of the Sixth Amendment right to the effective assistance of counsel).  The petitioner's fourth claim therefore lacks merit.

E.

The petitioner's next argument is that his attorney performed deficiently at resentencing by failing to object to the scoring of the sentencing guidelines. The trial court addressed this claim in deciding the petitioner's motion for relief from judgment and found that the guidelines were scored correctly.  Because the claim was rejected by the trial court judge on the grounds that the guidelines were correctly scored, the petitioner cannot show that he was prejudiced by counsel's failure to object.  *Baze v. Parker*, 371 F.3d 310, 322 (6th Cir. 2004) (holding that if "one is left with pure speculation on whether the outcome of . . . the penalty phase could have been any different," there has been an insufficient showing of prejudice).  Because the petitioner has offered no evidence to

-16-

show that the state trial judge would have been inclined to impose a lesser sentence, the petitioner

is unable to show that he was prejudiced by his counsel's failure to object to the scoring of his

sentencing guidelines. *Spencer v. Booker*, 254 F. App'x 520, 525-26 (6th Cir. 2007).

### F.

The petitioner's next argument is that he was denied his right to counsel on appeal. The

claim is belied by the record. The Supreme Court held in *Halbert v. Michigan*, 545 U.S. 605, 610

(2005), that "the Due Process and Equal Protection Clauses require the appointment of counsel for

defendants, convicted on their pleas, who seek access to first-tier review in the Michigan Court of

Appeals." The petitioner did not seek counsel or initially appeal his conviction or his sentence.

After the petitioner was found to have violated the terms of his probation and was resentenced, he

requested the appointment of appellate counsel. Attorney Daniel Rust was appointed to represent

the petitioner. Rust filed a delayed application for leave to appeal in the Michigan Court of Appeals,

claiming that the trial court had failed to state adequate grounds for departing above the

recommended guideline range. The petitioner ultimately succeeded on that claim when the state

supreme court remanded his case for resentencing based on that issue. The petitioner had no right

to counsel in his later state post-conviction review proceedings. *See Coleman v. Thompson*, 501

U.S. 722, 752-53 (1991) (citing *Pennsylvania v. Finley*, 481 U.S. 551 (1987)). The petitioner's

claim therefore is without merit.

### G.

The petitioner next argues that the trial court incorrectly calculated the amount of restitution

that the petitioner was required to pay. The petitioner argues that he should not have been made to

pay any amount paid by the victim's insurance company or any expense not "directly related to the

charge." Pet. at 14.  As relief, petitioner seeks a "return to status quo plus interest at a daily rate of 0.01095% (5% annually) for the entire sum certain of $46,920.76." *Ibid.*

The habeas statute provides that a federal court may entertain a habeas application by a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).  The essential purpose of the writ of habeas corpus is to free individuals from wrongful restraints upon their liberty. *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  The writ is not intended to redress errors in the imposition of a fine or other costs. *United States v. Watroba*, 56 F.3d 28, 29 (6th Cir. 1995).  Liability under a restitution order is like a fine-only conviction and is not a sufficient restraint on liberty to warrant habeas relief. *Mullins v. Birkett*, No. 09-12515, 2010 WL 764386, at *3 (E.D. Mich. Mar. 4, 2010) (holding that imposition of a restitution order as part of a California state sentence could not be challenged under the habeas statute because restitution did not affect the duration of habeas petitioner's state custody (citing *Flores v. Hickman*, 533 F. Supp. 2d 1068, 1085 (C.D. Cal. 2008)).  The petitioner here asks for an amendment to the court's order of restitution, not earlier release from custody.  A writ of habeas corpus would be inappropriate. *Mullins*, 2010 WL 764386, at *2 (citing *United States v. Zaragoza*, 16 F. Supp. 2d 1111, 1112 (N.D. Ind. 1998)); *see also United States v. Gianelli*, 543 F.3d 1178, 1184 n.7 (9th Cir. 2008) (stating that a federal prisoner "cannot present his claim for relief from [a] restitution order as a habeas petition because he is not seeking release from custody, and because review of restitution orders is not properly brought in a habeas petition").

## H.

The petitioner next argues that the prosecutor committed misconduct by asserting that the victim's injuries were sufficient to establish an intent to commit great bodily harm and by relying

on the victim's false allegations to support the charges. It is well established that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction." *United States v. Young*, 470 U.S. 1, 7 (1985) (quoting *Berger v. United States*, 295 U.S. 78, 88 (1935)). But that did not occur here.

At the preliminary examination, the prosecutor argued that the evidence concerning the victim's injuries established that the petitioner had an intent to inflict great bodily harm. Again at the plea hearing, the prosecutor asserted that evidence made out a factual basis for the petitioner's plea. There was nothing improper about those arguments. Under Michigan law, a defendant's intent may be inferred from all the facts and circumstances surrounding the offense, *People v. Lugo*, 214 Mich. App. 699, 709-710, 542 N.W.2d 921, 927 (1995), including the extent of the victim's injuries, *Mills*, 450 Mich. at 71, 537 N.W.2d at 915 (evidence of the nature and scope of the victim's injuries is probative of an intent to kill).

The petitioner also argues that the victim's allegations against him are lies, and that it was improper for the prosecutor to rely upon them to pursue charges. A habeas petitioner must show that a witness's statement was "indisputably false" to establish a claim of prosecutorial misconduct or a denial of due process based on the knowing use of false or perjured testimony. *Byrd v. Collins*, 209 F. 3d 486, 517-18 (6th Cir. 2000). The petitioner has not shown that the victim's allegations were false. Moreover, this claim — as well as the petitioner's eleventh claim — is waived by his *nolo contendere* plea, because it involves alleged conduct that happened prior to the entry of his plea. *See United States v. Ayantayo*, 20 F. App'x 486, 487-88 (6th Cir. 2001). It is well established that a valid guilty or *nolo contendere* plea in a criminal proceeding generally forecloses claims arising from the alleged deprivation of constitutional rights occurring before the entry of the plea.

-19-

*United States v. Broce*, 488 U.S. 563, 569 (1989); *Tollett v. Henderson*, 411 U.S. 258, 267 (1973).

The Supreme Court has explained:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within [constitutional standards].

*Tollett*, 411 U.S. at 267.  Simply stated, a defendant who pleads guilty or *nolo contendere* generally waives any nonjurisdictional claims that arose before his plea.  *See United States v. Ormsby*, 252 F.3d 844, 848 (6th Cir. 2001); *Siebert v. Jackson*, 205 F. Supp. 2d 727, 733-34 (E.D. Mich. 2002).  If the petitioner wished to challenge the veracity of the victim's statement to police and preliminary examination testimony, he should have elected to go to trial, rather than plead no contest.  The petitioner's claims of prosecutorial misconduct and false statements are without merit.

## I.

Next, the petitioner argues that his plea was invalid because the trial judge improperly participated in plea negotiations by conducting a *Cobbs* evaluation.  The petitioner's use of the term "*Cobbs* evaluation" is a reference to *People v. Cobbs*, 443 Mich. 276 (1993), which permits a Michigan defendant to enter a guilty plea in reliance on the trial court's initial evaluation of an appropriate sentence, subject to the defendant's right to withdraw his plea if the sentence actually imposed exceeds the preliminary evaluation.  *Cobbs* expressly states that the evaluation must be undertaken at the request of a party, not on the judge's own initiative, which is what happened here.  *Id.* at 283.

Although Federal Rule of Criminal Procedure 11(e) establishes limitations for plea agreement procedures that prohibit the court from participating in plea negotiations, that rule did not govern the state court proceedings and has no application here. State courts are not required to follow the procedures set forth in Federal Rule of Criminal Procedure 11. *Jones v. Parke*, 734 F.2d 1142, 1148 (6th Cir. 1984); *Waddy v. Heer*, 383 F.2d 789 (6th Cir. 1967).

The state trial court did not violate petitioner's right to a fair trial or due process by improperly participating in plea negotiations. There is no indication in the record that the trial court initiated plea negotiations. The petitioner was told that the court had undertaken a *Cobbs* evaluation and that if the court's review of the upcoming presentence investigation report suggested that a sentence harsher than the one-year jail term must be imposed, then the petitioner could withdraw his plea. Neither party challenged that statement. At the sentencing hearing, the petitioner did not move to withdraw his plea. Rather, he thanked the court for making the sentence available to him. The Court finds that petitioner has failed to show any action by the trial judge that rendered his plea involuntary.

### J.

The petitioner's tenth argument is that the prosecutor acquiesced in the merits of his appellate issues by failing to file responses to his applications for leave to appeal in the Michigan Court of Appeals and Michigan Supreme Court. Michigan law does not require a party to file an answer to an application for leave to appeal. *See* Mich. Ct. R. 7.205(C) and 7.302(D)(1) (stating that opposing parties *may* file an answer). There is no Michigan case that holds that a party effectively waives challenges to issues raised in an application for leave to appeal by not filing an answer.

There is no federal law that establishes the right of a defendant to have a prosecutor respond to a state court appeal.  This argument therefore is without merit.

### K.

Finally, in his amended petition, the petitioner argues that punishment both for the underlying crime of assault and for the violation of the terms of his probation placed him twice in jeopardy for the same offense.  The Fifth Amendment's Double Jeopardy Clause, incorporated against the states under the Fourteenth Amendment, *Benton v. Maryland*, 395 U.S. 784 (1969), affords a defendant three basic protections: (1) it protects against a second prosecution for the same offense after acquittal; (2) it protects against a second prosecution for the same offense after conviction; and (3) it protects against multiple punishments for the same offense, *Ohio v. Johnson*, 467 U.S. 493, 498 (1984).  It does not, however, "offer a guarantee to the defendant that the State will vindicate its societal interest in the enforcement of the criminal laws in one proceeding." *Oregon v. Kennedy*, 456 U.S. 667, 672 (1982).  The petitioner contends that his resentencing for the "offense" of violating the terms of his probation was an unconstitutional second prosecution for the underlying conduct of solicitation to murder.  Not so.  "Under Michigan law, a probation violation hearing does not constitute a criminal prosecution."  *Floyd v. Capello*, No. 09-190, 2011 WL 2940976, at *2 (W.D. Mich. June 30, 2011) (citing *People v. Johnson*, 191 Mich. App. 222, 227, 477 N.W.2d 426, 429 (1991)).  "If a judge finds that a probationer violated the terms of the probation, the probationer is neither burdened with a new conviction nor exposed to punishment other than that to which he was already exposed as a result of the previous conviction for which he is on probation." *Ibid.* (citing *Johnson*, 191 Mich. App. at 226, 477 N.W.2d at 429).  The trial court did not subject the petitioner to a second prosecution, but merely resentenced him on his original

conviction for assault, based on his failure to comply with the terms of the probation imposed under the plea agreement.  That punishment was not for the crime of solicitation to murder, even though the solicitation offense formed the basis for the probation violation.  The prison sentence imposed in this case was for the initial assault conviction, and it did not offend the Constitution.

### III.

The state court decisions in this case were not contrary to federal law, an unreasonable application of federal law, or an unreasonable determination of the facts.  The petitioner has not established that he is presently in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   April 11, 2013

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on April 11, 2013.

s/Deborah R. Tofil
DEBORAH R. TOFIL

---